*United States v. Austin Carter* – 3:22-CR-118-TAV-DCP; 3:22-MJ-2228-JEM
Part II— Supplemental Statement of the Reasons for Detention

The Court has considered the testimony, proffers, and arguments presented at the detention hearing, as well as the Pretrial Services Report ("PSR") prepared by the United States Probation Office and the Criminal Complaint [Doc. 3]. The United States Probation Office recommends that Defendant be detained. In consideration of releasing Defendant pending trial, the Court has weighed the factors set forth in 18 U.S.C. § 3142(g) and it finds that the proffers, testimony, and arguments presented at the detention hearing establish by clear and convincing evidence that Defendant is a danger to the community and that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community, for the reasons set forth below.

As an initial matter, the Court finds that the charged offenses do not give rise to a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of Defendant as required and the safety of the community. *See* 18 U.S.C. § 3142(e)(2)–(3). Defendant is charged with conspiring to commit an offense against the United States in violation of 18 U.S.C. § 371, retaliation against a federal officer in violation of 18 U.S.C. § 115(a)(1)(B), transmitting a threat to injure another in interstate commerce in violation of 18 U.S.C. § 875(c), and soliciting another to commit a crime of violence in violation of 18 U.S.C. § 373(a). While the Court agrees with Defendant's argument that Congress did not classify these offenses among those for which detention will be the presumed course, the Court disagrees with Defendant's argument that the Court should not consider the charges in this case because it must presume Defendant's innocence. At all times pretrial, including at his detention hearing, Defendant enjoys the presumption of innocence. 18 U.S.C. § 3142(j). But as discussed below, Congress expressly included the nature and circumstances of the charged offense as a factor to consider in the Court's analysis under § 3142(g).

Turning to the § 3142(g) factors, the Court first considers the nature and circumstances of the charged offenses, including "whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device." 18 U.S.C. § 3142(g)(1). For the purposes of § 3142(g)(1), a "crime of violence" is an offense that has as an element "the use, attempted use or threatened use of physical force against the person or property of another" or any felony "that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 3156(a)(4)(A)–(B). Defendant is charged with conspiracy, retaliating against a federal official, making interstate threats, and soliciting another to commit a crime of violence [Doc. 3]. Both retaliation against a federal official and solicitation of a crime of violence have as an element the attempt or threat to use physical force against another. *See* 18 U.S.C. §§ 115(a)(1)(B) (threat to "assault, kidnap or murder . . . a Federal law enforcement officer") & 373(a) (inducing another with intent that the person commit a "felony that has as an element the use, attempted use, or threatened use of physical force . . . against" another person). Thus, the Court finds Defendant is charged with crimes of violence.

The Court also finds the circumstances of the charged offenses, as alleged in the Criminal Complaint, evinced a willingness and a plan to commit acts of violence and contemplated the use

1

of firearms. Defendant allegedly conspired with Codefendant Edward Kelley ("Kelley") and a coworker (the cooperating witness) to perform "assassination missions" against the federal officers who investigated, arrested, and executed search warrants as to Kelley [Doc. 3 pp. 4–8]. Accordingly, the Court finds the nature and circumstances of the charged offenses weigh heavily in favor of detention.

Second, the Court considers the weight of the evidence of Defendant's dangerousness. 18 U.S.C. § 3142(g)(2). In *United States v. Stone*, the Sixth Circuit clarified that the weight of the evidence against the defendant "goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." 608 F.3d 939, 948 (6th Cir. 2010). Here, the evidence of Defendant's participation in a scheme to assassinate federal officers comes from a coworker, who was also a participant in the scheme. The coworker informed law enforcement that, following a meeting among Kelley, Defendant, and the coworker, Defendant gave the coworker a list of targeted federal officers and a thumb drive with images of officers executing a search warrant at Kelley's house and told the coworker to memorize these items and then destroy them [Doc. 3 ¶ 12]. The coworker made surreptitious recordings of conversations with Defendant, in which Defendant told the coworker to keep the list hidden, advised the coworker not to connect the thumb drive to the internet, assured the coworker of his commitment to the plan to attack the Knoxville FBI field office, and told the coworker that now is the time to commit and "make sure you got everything racked, locked up and loaded" [*Id.* ¶ 13]. Defendant stated in his interview with the United States Probation Office that he owns firearms, and his wife confirmed this during her testimony, although these have been secured with an unnamed individual in another city four-and-one-half hours away. Finally, Defendant has worked for four different security companies and is a member of the Army Reserves, where he received advanced training. While presuming Defendant's innocence, the allegations show a willingness to take violent action against others, and it appears that Defendant has the training and potential access to the equipment (firearms) to do so. The weight of the evidence of Defendant's dangerousness is therefore significant.

Third, the Court must consider a host of factors relating to Defendant's history and characteristics. 18 U.S.C. § 3142(g)(3)(A). Defendant is a 26-year-old man who has resided in either East or Middle Tennessee for most of his life. Defendant and his wife have been married for seven years. She testified in support of Defendant and is willing to be his third-party custodian. Defendant and his wife moved in with her parents in Kingsport, Tennessee, in early December 2022. Defendant proposes living with his wife in an apartment in the Kingsport area, which they will locate if he is released. Defendant has been steadily employed but has changed jobs frequently. His most recent job at a security company was terminated after his arrest in this case, but he remains in the Army Reserves. Defendant is in good physical health and denies any history of mental health issues or substance abuse. Defendant has no criminal history. While the issue of a suitable residence is unresolved, the Court finds that Defendant's history and characteristics generally support his release.

Finally, the Court must consider "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). The Government proffered that the coworker, who provided information in this case, was Defendant's friend and that they communicated daily. Defendant knows the coworker's identity, where the coworker lives, and the coworker's family. The allegations related to Defendant's actions in this

2

case in furtherance of retaliation against a federal officer reveal that the coworker could be in particular danger if Defendant were released.  In addition, the Government proffered that Defendant had knowledge that Kelley was on federal release and could not possess firearms, yet he allegedly assisted Kelley in acts that would constitute violations of Kelley's federal release.  This suggests Defendant would have little respect for conditions this Court would impose upon him, including that he not possess firearms.

Considering the § 3142(g) factors, the Court finds that the information provided in the PSR and at the hearing established by clear and convincing evidence that Defendant poses a danger to the community and another person, specifically his coworker.  The Court has considered whether there are any conditions or combination of conditions available that would reasonably assure the safety of the community and Defendant's appearance as required, including those offered by Defendant: GPS monitoring, his wife serving as a third-party custodian, and home detention.  None of these conditions or others, nor a combination of these or other conditions, will reasonably assure the safety of any other person and the community.  The Court questions whether Mrs. Carter can be an effective third-party custodian given that her work keeps her away from the home for extended periods several times a week.  The Court also questions whether any conditions would reasonably assure the safety of any other person and the community given the allegations in the Criminal Complaint about Kelley asking for the cooperating witness and Defendant to "recruit as many as you can" to effectuate the plan of attack on the Knoxville FBI field office in the event of Kelley's arrest [Doc. 3 ¶ 13].

For all these reasons, the Court finds that the factors collectively weigh in favor of pretrial detention.  Defendant shall therefore be detained.  18 U.S.C. § 3142(e)(1).

3

Case 3:22-cr-00118-TAV-JEM   Document 19-1   Filed 12/22/22   Page 3 of 3   PageID #: 39